```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES of AMERICA              :
                                      :    ORDER DENYING DEFENDANT'S
               -against-              :    RENEWED MOTION FOR BAIL
                                      :
SAMUEL NESS,                          :
                                      :    01 Cr. 699 (AKH)
                    Defendant.        :
-------------------------------------------------------x
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Samuel Ness's renewed motion for bail pursuant to 18 U.S.C. § 3143(b), in light of the Supreme Court's remand of his conviction to the Second Circuit for reconsideration in accordance with its decision in Cuellar v. United States, 128 S.Ct. 1994 (June 2, 2008), is denied for the reasons stated below.

**I.     Background**

On May 15, 2003, after a two-week jury trial, Ness was convicted on both counts of a two-count indictment. Count One alleged a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The Indictment alleged three objects of that conspiracy: 1) to engage in certain monetary transactions in criminally derived property in an amount greater than $10,000 that was derived from narcotics trafficking in violation of 18 U.S.C. § 1957(a); 2) to conduct certain financial transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and 3) to transport and transfer funds in violation of 18 U.S.C. § 1956(a)(2)(B)(i). Count Two of the indictment alleged money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The jury's verdict found Ness guilty of both counts, and of all three objects of the conspiracy alleged in the first count.

At trial, the Government presented evidence that between April 2000 and November 2001, Ness sent millions of dollars in proceeds from Ecstasy trafficking abroad. He

1

transported the money through his business, Protective Logistics, Inc., to foreign drug suppliers in Amsterdam, Belgium and Israel. He disguised the packages by mixing the Ecstasy money with the money, jewelry and other valuables that were entrusted by customers to his business. The evidence showed that Ness would take a one to four percent cut of the money being trafficked. See Ness Trial Tr. at 1061.

Immediately following the jury verdict on May 15, 2003, the Government moved to remand Ness.[1] After hearing argument from both parties, I ordered that Ness be remanded, finding that Ness had failed to show, by clear and convincing evidence, that he was not likely to flee. Three siblings were willing to post a bond on his behalf, but I held that they could not assure that he would be present for all court obligations. Specifically, I held that because of "the amount of money involved, the government's inability to find that money, the likelihood that the money is accessible to Mr. Ness in different parts of the world," the risk of loss posed to the people who said they were willing to cosign on his behalf would be substantially diminished. (Ness Trial Tr. at 1240).

At Ness's sentencing on February 13, 2004, I found that Ness's adjusted offense level was 34, resulting in a sentencing range of 151 to 188 months. I sentenced Ness to 180 months' imprisonment.

Ness appealed, and sought bail pending appeal. I denied his motion on August 19, 2004.

On April 25, 2005, the Court of Appeals remanded the case for further proceedings consistent with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). See United States v. Booker, 543 U.S. 220 (2005). I held a renewed sentencing hearing on August 8, 2005.

---

[1] Ness's detention on May 15, 2003 began his confinement. Thus, he is approximately 63 months into his 180 month term.

I found that the sentence imposed was just and not materially different from any sentence that would have been imposed after Booker, using the criteria set out in 18 U.S.C. § 3553(a).

Ness appealed again to the Court of Appeals. On April 4, 2006, his motion for bail was denied. On October 10, 2006, the Court of Appeals affirmed Ness's convictions and again denied bail. See United States v. Ness, 466 F.3d 79, 81 (2d Cir. 2006), vacated, __ S.Ct. __, 2008 WL 2329930 (2008).[2]

Ness then filed a petition for a writ of certiorari in the United States Supreme Court, arguing that the Second Circuit's affirmance of his conviction should be reversed because it was based on an incorrect definition of the terms "conceal or disguise." Ness argued that the concealment element of a money laundering charge pursuant to 18 U.S.C. § 1956 required not that the transportation itself was a concealment, but that the transaction or transportation at issue was designed to give unlawful proceeds the appearance of legitimate wealth. See United States v. Ness, 466 F.3d 79, 81 (2d Cir. 2006), vacated, __ S.Ct. __, 2008 WL 2329930 (2008). The Supreme Court had granted certiorari in Cuellar, a similar case, on October 25, 2007. As a result, Ness moved this Court for bail pending the resolution of his petition. On December 12, 2007, I denied Ness's motion, holding that Ness had failed to meet his burden by clear and convincing evidence that he was not a flight risk. Ness appealed my decision to deny bail, and on January 17, 2008, the Second Circuit denied his motion.

---

[2] In its opinion, the Court of Appeals ruled that because of a change in law, the instructions given to the jury on one of the three alleged objects of the conspiracy was erroneous. Ness, 466 F.3d at 82. However, since Ness did not object to the instruction at trial, the Court of Appeals reviewed the instruction for "plain error," and found that none had occurred. The Court of Appeals also noted that "[t]he conduct that would qualify Ness or his business as a 'financial institution' under the faulty jury charge would also satisfy the definition of a 'financial transaction' in 18 U.S.C. § 1956(c)(4)(A), which forms an alternate basis for conviction. . . . [h]ence, even if the jury relied on the faulty jury charge, it still found facts sufficient to sustain the conviction." Id. at 83.

## II. The Governing Statute

Release or detention pending a defendant's appeal is governed by 18 U.S.C. § 3143(b), which provides, in part:

> **(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>
> **(i)** reversal,
>
> **(ii)** an order for a new trial,
>
> **(iii)** a sentence that does not include a term of imprisonment, or
>
> **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Before a district court may grant bail pending a defendant's appeal, it must find the following:

> 1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; 2) that the appeal is not for the purpose of delay; 3) that the appeal raises a substantial question of law or fact; and 4) that if the substantial question is determined favorably on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985).

### III. Analysis

Ness has failed to meet the statutory burden by clear and convincing evidence that is required for his release on bail. Since the second statutory factor is not in dispute, I will address only the first, third and fourth prongs of the statute.

First, Ness has failed to establish by clear and convincing evidence that he is not a flight risk. I found, for my December 12, 2007 Order Denying Bail, and in previous bail hearings, that Ness' ties to friends and family in Israel, and his connections to that country, including his dual citizenship, as well as the presence of former friends and associates in Belgium and Switzerland, plus the substantial amount of money that had been sent abroad but never recovered, made him a flight risk. In addition, if I released Ness and he became a fugitive, any financial loss to Ness's co-signers could be recouped from funds that Ness might be able to access in foreign countries. As I held immediately after trial, Ness had moved millions of dollars of Ecstasy money out of the country as well, presumably, as his own funds, and could access that money to reimburse loss by his co-signers. More recently, Ness's wife and children have emigrated to Israel and are living in Jerusalem. These facts strengthen Ness's already strong links to Israel. Ness's mother and three of his siblings also live in Israel, and Ness has dual Israeli-United States citizenship. Given the likelihood that hidden assets from Ness's money laundering still exist in Belgium and Switzerland, where officials have already seized some assets, and Ness's dual Israeli-United States citizenship, his access to any such hidden funds would only facilitate his flight. Considering these points, and in light of the proof burden on Ness to show by clear and convincing evidence that he does not pose a risk of flight, I hold that Ness must remain in confinement. I also hold that any "subjective assessments," such as Ness's promise to turn over his passports and submit to electronic monitoring, if necessary, and the affidavits of his family members, are insufficient to meet the requisite burden of clear and

convincing evidence on his part. See United States v. Londono-Villa, 898 F.2d 328, 330 (2d Cir. 1990) (holding that district court's order of release pending sentencing clearly erroneous when defendant failed to "satisfy the heightened burden of proof placed on the defendant to establish that he is not likely to flee by clear and convincing evidence" even when defendant's sister and brother-in-law had posted $1 million bond, defendant surrendered his passports, executed a waiver of extradition applicable to any country he might be found in, and submitted himself to monitoring of his whereabouts); see also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) (noting that surveillance equipment can be circumvented by "the wonders of science and of sophisticated electronic technology"). Accordingly, I hold that Ness has failed to meet the first prong of the Randell test.

Since Ness has failed to establish the burden required by the first prong, the subsequent prongs need not be assessed. However, for purposes of this Order, I consider the remaining prongs. I hold that neither of the two issues raised by Ness in his motion constitute a "substantial question" that is "likely to result in reversal, an order for a new trial, or a reduced sentence of imprisonment." 18 U.S.C. § 3143(b)(1)(B). A "substantial question" is a "'close' question . . . that very well could be decided the other way." Randell, 761 F.2d at 125 (internal citations omitted). The two issues presented by Ness in his motion are: 1) that the jury instruction defining the term "financial institution" was erroneous and the evidence was insufficient to establish the financial institution element of the charges; and 2) when considered in light of Cuellar, the evidence presented at trial does not establish that Ness acted with the requisite intent to "conceal or disguise" the funds necessary to support a conviction under 18 U.S.C. § 1956(a).

As an initial matter, it is important to note that Ness was convicted of both counts of a two-count indictment. Count One alleged a conspiracy with three separate objects, and the

jury indicated on its verdict form that they found that all three objects had been proven beyond a reasonable doubt. See Section I, supra. Count Two alleged money laundering, in violation of 18 U.S.C. § 1956(A)(1)(B)(i). Even if Ness were to prevail on the financial institution question, the issue raised by the Second Circuit, it would affect only the first object charged in the first count. Similarly, if Ness were to prevail on the concealment issue, the issue raised by the Supreme Court decision in Cuellar, it would only affect his conspiracy conviction with respect to the second and third objects of conspiracy in Count One, and the substantive money laundering conviction under Count Two. As a result, Ness must prevail on both the financial institution and the concealment issues in order to be eligible for potentially a new trial and, disregarding the first prong of being unable to prove that he is not a flight risk, the possibility of bail.

With respect to the financial institution issue, Ness claims that he raises a substantial question likely to result in reversal. However, as the Second Circuit previously held, Ness failed to object to the financial institution jury charge, and as a result, the instruction may be reviewed only for plain error. Ness, 466 F.3d at 82-83; see also United States v. DePalma, No. 06-4833, 2008 WL 2595199, at *1 (2d Cir. June 30, 2008). To show plain error with respect to an unobjected-to jury instruction, a defendant must show an error that is clear under current law that prejudiced the defendant. United States v. Khan, 53 F.3d 507, 517 (2d Cir. 2000). In addition, "reversal of a conviction is required only if the instructions, viewed as a whole, caused the defendant prejudice." United States v. Naiman, 211 F.3d 40, 51 (2d Cir 2000).

Ness cannot show prejudice. The money laundering statutes at issue point to 31 C.F.R. § 101.11, which defines a financial institution to include, among other things, any "person engaged as a business in the transfer of funds." 31 C.F.R. § 101.11(uu)(5)(B), (ii). At trial, the Government presented significant evidence showing that Ness' operations made him "a person engaged as a business in the transfer of funds." that Ness received large sums of money from a

7

number of people, including $2.1 million from one co-conspirator in a McDonald's parking lot and $191,000 from another co-conspirator on a deserted street in Brooklyn. See Ness Trial Tr. at 1055. That money was then transported abroad as part of his armored car business. Ness does not argue, either at trial or now, to the contrary.

Nothing in the letter of the Department of Treasury's Financial Crimes Enforcement Network (FinCEN) letter attached by Ness as "interpretive guidance" on the financial institution issue changes this result. In the letter, FinCEN states that it has "previously ruled that an armored car business that solely engages in providing secure transport of goods, including currency and other valuables, for the Federal Reserve, the U.S. Mint, banks, and private companies, is not a financial institution . . . so long as the armored car business cannot be viewed as participating, or having a stake, in the financial transaction." At trial, the Government provided evidence showing that Ness received a percentage fee from his transfer of funds, which meant that he had "a stake" in the financial transaction and would therefore not be protected by this definition. Furthermore, the letter goes on to say that "[t]o the extent that neither the person for whom an armored car business transports funds, nor to whom the funds are transported, is a U.S. financial institution, the armored car business is a money transmitter for BSA [Bank Secrecy Act] purposes." Again, the Government presented ample evidence at trial establishing that Ness transported the Ecstasy proceeds to narcotics traffickers, not "U.S. financial institutions." Since Ness has failed to prove that the financial institution issue is a "close question" under Randell, I hold he is not entitled to bail on that basis.

Ness also argues that his convictions cannot stand for those offenses involving the concealment element of 18 U.S.C. § 1956(a), in light of Cuellar. The Supreme Court held in Cuellar that conviction pursuant to § 1956(a) "requires proof that the transportation was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or

the control of the funds." At trial, the Government provided evidence that amply supported the jury's finding that this requirement had been met in Ness's case. Ness misreads Cuellar as standing for the proposition that the concealment element of § 1956(a) is satisfied only when the transaction or transportation in question was designed to give unlawful proceeds the appearance of legitimate wealth. The Supreme Court in Cuellar specifically rejected that point, holding that concealment "does not require proof that the defendant attempted to create the appearance of legitimate wealth." Cuellar, 128 S.Ct. at 2006. At Ness's trial, the Government showed that the proceeds of drug sales in the United States were being transported to people in Europe, commingled with jewelry and other packages of valuables that Ness declared to be part of his business of transporting such valuables internationally. The transportation was designed to conceal or disguise the "nature" of that which was being transported, or its "location" among the valuables that Ness was allowed to transport and move from one airplane to another at JFK airport, or that the "source" of the items being transported was ecstasy distributions. Accordingly, Ness's case is distinguishable from Cuellar on these facts, and I hold that with respect to the concealment issue, there is no "close question" likely to result in reversal or an order for a new trial.

Since defendant has failed to carry his burden demonstrating that he should be granted bail under 18 U.S.C. § 3143(b) at this time, the motion is denied.

SO ORDERED.

Dated: New York, New York
August __, 2008

ALVIN K. HELLERSTEIN
United States District Judge

9