MAILED TO COUNSEL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/5/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                                        :
UNITED STATES OF AMERICA,               :
                                        :    01 CR. 699 (LAP)
              v.                        :
                                        :    MEMORANDUM AND ORDER
SAMUEL NESS,                            :
                                        :
              Defendant.                :
                                        :
------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

     Defendant Samuel Ness ("Ness") brings this application

pursuant to 18 U.S.C. § 3006A (the "Hyde Amendment") for

the fees and costs of defending the criminal case against

him.  For the reasons set forth herein, Defendant's

application is DENIED.

I.   BACKGROUND

     A.   Procedural History

     Ness was indicted on July 19, 2001 in the Southern

District of New York on one count of conspiracy to launder

the proceeds of narcotics trafficking, in violation of 18

U.S.C. § 1956(h).  (Government's Memorandum in Response to

Ness's Motion ("Govt. Mem."), Ex. A.)  Ness was arrested in

Belgium on charges of money laundering in violation of

Belgian law.  The Government requested Ness's extradition

in September 2001, and in December 2001, Ness waived

extradition and was returned to the United States.  On

April 24, 2003, a grand jury returned a two-count superseding indictment charging Ness with one count of conspiracy to launder the proceeds of narcotics trafficking in violation of 18 U.S.C. § 1956(h) and one substantive money laundering count in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (2). (Govt. Mem., Ex. C.)

As objects of the conspiracy, the first count of the superseding indictment set forth three alternatives: (1) engaging "in monetary transactions in criminally derived property that was of a value greater than $10,000 and that was derived from . . . narcotics trafficking (id. ¶ 2); (2) conducting financial transactions involving the proceeds of narcotics trafficking "knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds" (id. ¶ 3); and (3) transporting, transmitting, and transferring "monetary instruments and funds from a place in the United States to and through a place outside the United states," knowing that the funds were the proceeds of narcotics trafficking and knowing that the transfers were designed "to conceal and disguise the nature, location, source, ownership and control of the proceeds" (id. ¶ 4).

Trial commenced on May 5, 2003 before the Hon. Alvin

2

K. Hellerstein, and on May 15, 2003, Ness was convicted on both counts alleged in the indictment. On a special verdict form, the jury found Ness guilty of all three objects of the conspiracy alleged in Count One. Ness was sentenced to a term of 180 months in prison. Ness appealed his conviction and sentence, but before either party had submitted briefs, the Court of Appeals for the Second Circuit remanded the case to the district court for resentencing. (See dkt. no. 85.) The district court declined to resentence Ness on the grounds that his original sentence was reasonable. (See dkt. no. 92.)

Ness appealed his conviction and sentence. In his brief, Ness advanced several arguments, inter alia, that: (1) the evidence was insufficient to support his conviction with respect to the element of "concealment" as set forth in 18 U.S.C. § 1956; (2) the district court did not properly instruct the jury on the definition of "financial institution" under the money laundering statute nor did it properly instruct the jury on conscious avoidance; (3) the district court improperly admitted evidence from an HSBC Bank witness reflecting Ness's familiarity with legitimate business practices; and (4) the Government violated its disclosure obligations. The Court of Appeals affirmed Ness's conviction on October 10, 2006. (See United States

v. Ness, 466 F.3d 79 (2d Cir. 2006), vacated, 128 S. Ct.
2900 (2008).)  With regard to the issue of concealment, the
Court, adhering to precedent, found that given "the level
of secrecy that attended Ness's dealings with the
traffickers . . . a jury could find that the acts of which
Ness is accused were designed, at least in part, to conceal
the identity of the funds." Ness, 466 F.3d at 81.  On the
issue of the district court's "financial institution"
instruction, the Court agreed with Ness that the
instruction was improper but noted that Ness "failed to
object to the charge below." Id. at 82.  In rejecting
Ness's claim that the faulty instruction caused him
prejudice, the Court found that Ness's conspiracy
conviction "could be sustained on the basis of its third
object alone, which does not have 'financial institution'
as an element." Id.  The Court rejected the rest of Ness's
claims, finding them "to be without merit." Id. at 83.

Ness filed a petition for a writ of certiorari in the
United States Supreme Court arguing that the Court of
Appeals' affirmance of his conviction should be reversed
because it purportedly was based on an erroneous definition
of "conceal or disguise" as those terms are defined in 18
U.S.C. § 1956.  The Supreme Court granted Ness's petition,
vacated the Court of Appeals' opinion, and remanded the

4

case for further consideration in light of its decision in Cuellar v. United States, 553 U.S. 550 (2008). Ness v. United States, 128 S. Ct. 2900 (2008). The Court of Appeals reversed Ness's conviction finding that the "under Cuellar, [the] evidence is not sufficient to prove transaction or transportation money laundering offenses." United States v. Ness, 565 F.3d 73, 78 (2d Cir. 2009). Because the transaction and transportation conviction was overturned, the Court of Appeals revisited its analysis of the "financial institution" instruction. The Court reversed Ness's conviction finding that "the evidence concerning the involvement of a financial institution was legally insufficient even if the instruction was correct." Id.

The Mandate of the Court of Appeals issued on August 12, 2009. The District Court entered a judgment of acquittal on September 18, 2009. Ness filed this motion on November 17, 2009.[1]

## B.   Defendant's Claims for Fees

Ness claims that while he was abroad he was arrested, "without evidence," on charges that he laundered money through Swiss bank accounts. (Hyde Amendment Request for

---

[1] Ness attempted to file this motion on October 28, 2009 and November 13, 2009 [dkt. nos. 114, 115], but both attempts were rejected as filing errors by the Clerk of the Court.

5

Fees ("Ness Req.") at 3.) Upon his extradition and return
to the United States, the Government withdrew the money
laundering charges and instead charged Ness with
"concealment" money laundering. (Id. at 4.) At trial, Ness
argued that the Government tried the case "by parading a
bunch of drug dealers before the jury and having them
testify to their drug dealings--even though [Ness] never
had anything to do with drug dealing, nor was involved in
its 'promotion'." (Id. (emphasis in original).) Lastly,
Ness argues that the Government, throughout the trial and
appeal, pressed "a completely flawed and overbroad
'financial institution' theory." (Id.)

II. DISCUSSION

A. Legal Standard

The Hyde Amendment was "enacted as part of P.L. 105-
119, the $31.8 billion Commerce, Justice and State, the
Judiciary, and Related Agencies Appropriations Act of 1998,
and is found as a statutory note to 18 U.S.C. § 3006A."
United States v. Schneider, 395 F.3d 78, 85 (2d Cir. 2005)
(internal quotation marks omitted). It provides that a
court

    may award to a prevailing party, other than the
    United States, a reasonable attorney's fee and
    other litigation expenses, where the court finds
    that the position of the United States was
    vexatious, frivolous, or in bad faith, unless the

6

court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. § 3006A. The statute does not define "vexatious, frivolous, or in bad faith," and the Court of Appeals has not "parse[d] the precise meaning of the words." Schneider, 395 F.3d at 86. The district court in Schneider, relying on definitions used by other circuit courts, defined the terms as follows: "[a] frivolous action is one that is groundless with little prospect of success; often brought to embarrass or annoy the defendant;" whereas "vexatious has both a subjective and objective element; subjectively the government must have acted maliciously or with an intent to harass the Defendant; objectively, the action must be deficient or without merit;" and finally, "[b]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." United States v. Schneider, 289 F. Supp. 2d 328, 331-32 (E.D.N.Y. 2003) (internal citations and quotation marks omitted), aff'd, 395 F.3d 78 (2d Cir.

2005).

"The Government's 'position' means its case as a
whole, so that '[e]ven if the district court determines
that part of the Government's case has merit, the movant
might still be entitled to a Hyde Amendment award if the
court finds that the Government's 'position' as a whole was
vexatious, frivolous, or in bad faith.'" United States v.
Mitselmakher, No. 07 CR 37, 2008 WL 5068609, at
*7 (E.D.N.Y. 2008) (quoting United States v. Heavrin, 330
F.3d 723, 730 (6th Cir. 2003)), aff'd, 347 F. App'x 649 (2d
Cir. 2009). "A 'presumption of regularity supports
. . . prosecutorial decisions and, in the absence of clear
evidence to the contrary, courts presume that they have
properly discharged their official duties.'" Id. (quoting
United States v. Armstrong, 517 U.S. 456, 464 (1996).

 B. Analysis

  i. Timeliness

As an initial matter, Ness's request for fees is
untimely and could be denied on this basis alone. The Hyde
Amendment explicitly incorporates the procedures and
limitations provided for awards of attorney fees under the
Equal Access to Justice Act, 28 U.S.C. § 2412 et seq.
("EAJA"). Under the EAJA,

 A party seeking an award of fees and other

8

expenses shall, within thirty days of final
judgment in the action, submit to the court an
application for fees and other expenses which
shows that the party is a prevailing party and is
eligible to receive an award under this
subsection, and the amount sought, including an
itemized statement from any attorney or expert
witness representing or appearing in behalf of
the party stating the actual time expended and
the rate at which fees and other expenses were
computed.

28 U.S.C. § 2412(d)(1)(B). Section 2412(d) requires a

party seeking an award to file a detailed application

within thirty days of "final judgment." "Final judgment"

is defined as a judgment that is "final and not appealable,

and includes an order of settlement." 28 U.S.C.

§§ 2412(d)(1)(B) and (d)(2)(G). The thirty-day deadline to

file a fee application is not a jurisdictional requirement.

See Scarborough v. Principi, 541 U.S. 401, 414 (2004).

Instead, the deadline addresses "a mode of relief (costs

including legal fees) ancillary to the judgment of a court

that has plenary 'jurisdiction of [the civil] action' in

which the fee application is made." Id. at 413 (citation

omitted).

The issue here is whether the district court's

judgment of acquittal was a "final judgment" that triggered

the time by which Ness was required to file the instant

application. In criminal cases, the Government may appeal

"a decision, judgment, or order of a district court

9

dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731. In the typical scenario where a district court orders a judgment of acquittal after a jury has convicted the defendant, the government may appeal so long as the defendant does not face the prospect of a second trial. See United States v. DiFrancesco, 449 U.S. 117, 130 (1980) ("[T]he Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact." (citing United States v. Wilson, 420 U.S. 332, 343-44 (1975))). Here, however, the judgment of acquittal was entered by the district court after the Court of Appeals for the Second Circuit reviewed Ness's appeal after remand from the Supreme Court, found that the evidence was insufficient to support Ness's conviction, and issued a mandate to the district court directing that Ness's conviction be reversed. See United States v. Ness, 565 F.3d 73 (2d Cir. 2009); dkt. no. 111 (Court of Appeals' Mandate). Therefore, since Ness's conviction had already been appealed and reviewed by the Court of Appeals, the

10

district court's subsequent entry of judgment of acquittal
pursuant to the Court of Appeals' mandate constituted a
"final judgment" because the Government could not appeal.
The district court entered the judgment of acquittal on
September 18, 2009, the date on which the thirty-day period
to file an application for fees began to run.  The time to
file the application expired on October 19, 2009.[2]  Ness
attempted to file the application on October 28 and
November 13, 2009 (see dkt. nos. 114, 115), but the motion
was improperly filed.  Ness did not properly file the
motion until November 17, 2009, nearly one month after the
deadline to file had expired.  Even assuming the Court were
to relate back to Ness's first attempt to file (October 28,
2009), the application still would have been untimely.
Ness has not tried to explain his tardiness in filing or
argued that the deadline to file should be tolled.  The
untimeliness of the application alone is a sufficient
ground to deny Ness's request for fees.

---

[2] The thirtieth day, October 18, 2009, fell on a Sunday, so
pursuant to Fed. R. Civ. P. 6(a)(3), "the period runs until
the end of the next day that is not a Saturday, Sunday,
legal holiday, or day when the clerk's office is
inaccessible."  It should be noted that the Federal Rules
of Civil Procedure were amended on December 1, 2009, and
the provision covering deadlines that fall on a Sunday is
now Fed. R. Civ. P. 6(a)(1)(C).

ii.  Merits of Defendant's Application

Even assuming Ness filed a timely application for
fees, his request is wholly without merit.  In deciding
whether Ness has met his burden of proof with respect to
his claims, "the Government's action must be viewed from
the perspective of the government at the time, including
evidence not presented at trial, rather than with the power
of twenty-twenty hindsight based solely on reasonableness."
United States v. Mitselmakher, No. 07 CR 37, 2008 WL
5068609, at *7 (E.D.N.Y. 2008) (internal citations and
quotation marks omitted), aff'd, 347 F. App'x 649 (2d Cir.
2009).

1.  The Original Indictment and the
Government's Concealment Theory

Ness's first example of the Government's alleged
vexatious and bad faith prosecution is that he "was
arrested on an extradition warrant that alleged--obviously
without evidence--that [he] used a Swiss bank account to
'launder' moneys that were sent through his armored car
business . . . ."  (Ness Req. at 3.)  Ness argues that the
Government's bad faith was proven by its decision to
withdraw the original charges and file a superseding
indictment charging Ness with "'concealment' money
laundering."  (Id. at 3-4.)

12

Ness's complaint is overstated. "Superseding indictments are permitted so long as the filing of the subsequent indictment does not prejudice or harass a defendant." United States v. Gigante, 982 F. Supp. 140, 155 (E.D.N.Y. 1997). Although both the original and superseding indictments charged Ness with money laundering, the Government, in the superseding indictment, altered the means and methods of the conspiracy. (Compare Govt. Mem. Exs. A, C.) The original indictment charged Ness with transferring large sums of money, which were proceeds from narcotics trafficking, to banks outside the United States and failing to file the required Currency and Monetary Instrument Report ("CMIR"). (Id., Ex. A ¶ 5.) By contrast, the superseding indictment charged Ness with secretly transporting the proceeds of narcotics trafficking both within the United States and to foreign countries. (Id., Ex. C ¶ 5.) Even assuming Ness is correct that the Government was mistaken in its original theory that Ness failed to file CMIRs, such a mistake does not rise to the level of bad faith, for the heart of the Government's case was that Ness illegally transported the proceeds from narcotics trafficking outside the United States. If the superseding indictment did not cause any prejudice to Ness, it surely is not be enough to prove that the Government's

13

position was vexatious, frivolous, or in bad faith. See United States v. Bok, No. 95 Cr. 403(JGK), 1997 WL 148815, at *3 (S.D.N.Y. Mar. 27, 1997) ("[E]ven if the original Indictment was in some way defective, the returning of a Superseding Indictment by a different grand jury cures any prejudice to the defendant that may have been caused by an improper original Indictment.").

Next, Ness argues that the Government prosecuted him pursuant to a faulty theory of concealment money laundering. According to the Government, Ness received money from narcotics dealers and transported the funds in containers of jewelry. In support of this theory, the Government called several witnesses during trial who testified that Ness engaged in money laundering. Chief among the Government's witnesses was Robert David, Ness's business partner. (Govt. Mem. at 6.) David testified that while working in the business' Los Angeles office, he would receive duffel bags of money in small denominations, count the money, and ship the money to Ness, who was located in the business' New York office. (Id. at 17.) David testified that Ness ordered him not to give the couriers receipts describing the contents of the containers. (Id.) When David asked about the source of the money, Ness told him "you don't want to know, just do your thing." (Id.)

Lastly, David testified that Ness directed him to pack the cash into containers with jewelry that the business was legitimately shipping. The airway bills on these containers identified the contents as jewelry but did not indicate that the containers also contained cash. (Id. at 8.) Ness preferred this method because it was "confidential." (Id.) Based in part on this testimony, the jury convicted Ness on the charge of money laundering.

Despite the Government's successful prosecution of Ness based on a theory of concealment, Ness claims that the Government's theory was "dubious" because it was not supported by Second Circuit precedent. Ness's complaint is misguided. "A defendant seeking Hyde Amendment fees and costs on the basis of a legal position the government took in prosecuting him must establish that the position was foreclosed by binding precedent or so obviously wrong as to be frivolous . . . . Once a district court judge accepts the government's legal position it will be extremely difficult to persuade [a court] that the issue was not debatable among reasonable lawyers and jurists, i.e., that it was frivolous." United States v. Gilbert, 198 F.3d 1293, 1304 (11th Cir. 1999). At the time of Ness's trial, the Government sought to prove the money laundering charge on the theory that Ness received the proceeds from narcotics

trafficking and transported the funds in a secretive
manner.  Although this theory was rejected by Courts of
Appeals in other circuits, the Court of Appeals for the
Second Circuit had yet to opine on the issue at the time of
Ness's prosecution.  See, e.g., United States v. Cuellar,
441 F.3d 329, 334 (5th Cir. 2006) (holding that to prove
concealment, the government must show that the defendant
was trying to "create the appearance of legitimate
wealth"); United States v. Dimeck, 24 F.3d 1239, 1246 (10th
Cir. 1994) (defendant's conviction on charges of money
laundering could not be supported based solely on
defendant's courier activity because "delivery of the money
did not result in the kind of transaction prohibited" by
the statute); but cf. United States v. Carr, 25 F.3d 1194,
1206 (3d Cir. 1994) (the money laundering statute requires
the government to prove "only that [defendant] knew his act
of transporting the funds was designed to disguise or
conceal its nature, source, ownership, or control.").[3]
Thus, the Government's concealment theory, while rejected
by other circuits, was not "foreclosed by binding [Second
Circuit] precedent." Id.  Moreover, by the time Ness
appealed his conviction to the Court of Appeals, the Court

---

[3] The precedential weight of these cases was altered after
the Supreme Court's decision in Cuellar, but at the time of
Ness's prosecution, the cases were still good law.

had already ruled that the concealment theory used by the

Government in Ness's prosecution was appropriate. See

United States v. Gotti, 459 F.3d 296 (2d Cir. 2006). The

Court of Appeals simply followed its own precedent when it

affirmed Ness's conviction on the grounds that (1) "[a]mple

evidence was presented to permit a jury to find that Ness

received narcotics proceeds and remitted them to other

figures connected to the different drug operations with

which he was involved" and (2) "the level of secrecy that

attended Ness's dealings with the traffickers was

comparable to that noted in Gotti." United States v. Ness,

466 F.3d 79, 81 (2d Cir. 2006), rev'd, 128 S. Ct. 2900

(2008). Ness's conviction was eventually reversed (see

United States v. Ness, 565 F.3d 73 (2d Cir. 2009)) after

the Supreme Court settled a circuit split concerning what

must be proven to show that a defendant's transportation of

funds was "'designed in whole or in part . . . to conceal

or disguise the nature, the location, the source, the

ownership, or the control of the proceeds.'" Cuellar v.

United States, 553 U.S. 550, 128 S. Ct. 1994, 2006 (2008)

(quoting 18 U.S.C. § 1956(a)(2)(B)(i)). Accordingly,

because the Government's position to charge Ness with money

laundering by means of concealment was accepted by both the

district court and the Court of Appeals and was only found

to be insufficient after a decision by the Supreme Court, Ness fails to meet his burden "to prove that the prosecution was vexatious, frivolous, or in bad faith" at the time of his indictment and prosecution. United States v. Gladstone, 141 F. Supp. 2d 438, 445-46 (S.D.N.Y. 2001).

### 2. Financial Institution Theory

Similar to his complaint of the Government's concealment theory, Ness also argues that the Government's insistence that Ness was a "financial institution" and its improper jury instruction defining "financial institution," further prove that the Government's position was frivolous. Ness's argument is precluded by (1) the district court's adoption of the Government's jury instruction, (2) Ness's failure to object to the faulty instruction, and (3) the Court of Appeals' original affirmance of Ness's conviction. The Government's proposed definition of "financial institution" included "any person engaged as a business in the transfer of funds." (Govt. Mem. at 16.) The district court adopted the definition and advised the jury that "financial institution" includes "any person or business that physically transports . . . or causes to be physically transported . . . currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States."

18

(Id.)  The district court's acceptance of the instructions

demonstrates that "the issue was not debatable among

reasonable lawyers and jurists, i.e., that it was

frivolous." United States v. Gilbert, 198 F.3d 1293,

1304 (11th Cir. 1999).  Moreover, as the Court of Appeals

for the Second Circuit held in United States v. Schneider,

"Congress intended to reserve liability for abusive conduct

that was sufficiently significant to be found to

characterize the position of the United States.  We can

infer that Congress did not intend to allow liability to be

imposed for trivial instances of offending conduct." 395

F.3d 79, 90 (2d Cir. 2005).  Here, although the

Government's proposed instruction may have been improper,

the error was, at worst, trivial, especially since it was

so innocuous as to merit no objection from Ness's trial

counsel.  In any event, the Court of Appeals found that the

faulty instruction did not cause Ness prejudice because the

conviction could have been sustained on a independent basis

that did not have "financial institution" as an element.

See United States v. Ness, 466 F.3d 79, 82 (2d Cir. 2006)

("Ness's conspiracy conviction could be sustained on the

basis of its third object alone, which does not have

"financial institution" as an element, so the relevant

count for purposes of this challenge is the substantive

count of transaction money laundering.  The [offending

conduct] . . . would also satisfy the definition of

"financial transaction" . . . which forms an alternate

basis for conviction.").  Accordingly, the Government's

insistence that Ness qualified as a "financial

institution," although improper, did not rise to the level

of bad faith.  Thus, the Court rejects Ness's claim for

fees on this basis.

### 3.  Other Grounds

Finally, Ness argues that the Government demonstrated

animus by refusing to turn over Ness's passport and other

evidence obtained in Switzerland.  Ness's argument is

completely frivolous.  As an initial matter, Ness did not

raise these issues in his initial appeal.  Instead, he

argued that the Government violated its disclosure

requirements by failing to release portions of a taped

conversation between Ness and another person while Ness was

in a Belgium prison.  See Brief for Appellant at 93, No. 05-

4401-cr (2d Cir. Oct. 21, 2005).  The Courts Of Appeals

rejected Ness's disclosure argument finding it to be

"without merit."  Ness, 466 F.3d at 83.  Here, Ness's claims

are completely belied by the Government's exhibits to its

memorandum (see Govt. Mem., Ex. D-J) which chronicle the

Government's attempts to obtain the documents at issue and

ultimately turn them over to Ness.  Even if Ness is correct
that the Government delayed in turning over the documents,
such misconduct (if it could even be characterized as
misconduct) does not rise to the level of vexatious,
frivolous, or in bad faith.  Accordingly, Ness's request is
denied on these grounds.

## CONCLUSION

In his application for fees, Ness has set forth
several examples of what he considers clear proof that the
Government's prosecution of him was vexatious, frivolous,
and in bad faith; however, his examples barely evidence
prosecutorial misconduct, let alone an intent on the part
of the Government to harass him maliciously.  Ness was
indicted, tried, and convicted pursuant to a valid theory
of money laundering.  His conviction was upheld by the
Court of Appeals and was only reversed after the Supreme
Court ruled that the Court of Appeals for the Second
Circuit's interpretation of concealment money laundering
was incorrect.  The Supreme Court's ruling ultimately led
to Ness's freedom, but it does not entitle him to fees and
costs.  His request is filled with nothing more than
trivial complaints concerning how the prosecutors conducted
themselves during trial.

With the passage of the Hyde Amendment, Congress

intended that fees and costs be awarded to the petitioner who was the victim of a truly meritless criminal action initiated by the Government.  It was not intended for the complainant who, with the benefit of hindsight, lists as many examples of the prosecution's trial mistakes in the hopes that a combination of errors may warrant the award of fees.  See, e.g., United States v. Ali, No. 06 CR 200, 2008 WL 4773422, at *15 (E.D.N.Y. Oct. 27, 2008) ("[T]he cataloguing of every instance of intense disagreement between the parties over the life of an investigation and trial, be it claimed Brady violations or bush league recess interrogation of the courtroom gallery, contorts the Hyde Amendment into a vehicle for Monday morning quarterbacking Congress simply did not intend.").  Accordingly, for the foregoing reasons, Defendant Samuel Ness's Hyde Amendment Request for Fees [dkt. no. 116] is DENIED.

SO ORDERED.

Dated:  New York, New York
        April 5, 2010

_Loretta A. Preska_

LORETTA A. PRESKA, CHIEF U.S.D.J.

cc: Hon. Alvin K. Hellerstein